PIERCE, Chief Judge.
This proceeding is before this Court on certified questions pursuant to F.A.R. 4.6, *74 32 F.S.A., submitted by the Pinellas County Circuit Court.
Appellant (hereinafter the Bank) purchased a blanket banker’s bond from the appellee insurance company (hereinafter the Company), by which the Company agreed to indemnify and hold the Bank harmless as to various classes of losses, seven in number, one of which consisted of losses incurred “on premises”. As to this latter loss the bond provided inter alia:
“The losses covered by this bond are as follows:
On premises
(B) Any loss of Property through robbery, burglary, common law or statutory larceny, theft, false pretenses, hold-up, misplacement, mysterious unexplainable disappearance, damage thereto or destruction thereof, whether effected with or without violence or with or without negligence on the part of any of the Employees ...”
The bond also contained a separate insuring clause applicable to all classes of losses. Under this clause the Company agreed to indemnify the Bank “ . against court costs and reasonable attorneys’ fees incurred and paid by the Insured [Bank] in defending any suit or legal proceeding brought against the Insured to enforce the Insured’s liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Ináured under the terms of this bond.” The clause also gave the Company permission at its election to conduct the defense of any suit brought against the Bank.
Subsequently, on or about April 10th, 1968, while said blanket bond was in effect, one John Reid Topping appeared at the Bank and opened a checking account in the name of Maricopa Corporation and announced that he had full authority to draw on that account. Topping executed a signature card and funds were subsequently deposited into the Maricopa account that were derived from a trust established by Topping’s mother wherein Topping and Bankers Trust Company of the City of New York were designated as co-trustees.
Topping informed the Bank of the provisions of his mother’s trust whereby he had full power and control over the proceeds of the trust, which control was binding upon the corporate co-trustee. Topping later presented to the Bank copies of correspondence allegedly received from Bankers Trust Company indicating that said Bankers Trust had resigned as co-trustee. The Bank was without knowledge that such representations were false.
Topping further represented to the Bank that an escrow agreement, previously furnished to the Bank, was of no force and effect, which representation was made in order that Topping might withdraw and convert the funds of Maricopa Corporation to Topping’s sole use and benefit.
The Bank relied upon the data so produced and the false representations of Topping and honored his withdrawals from the Maricopa account. At the time, the Bank was unaware of the restrictions actually imposed upon Topping by the bylaws of Maricopa Corporation.
Maricopa thereupon sued the Bank in the Circuit Court of Pinellas County, alleging that the Bank had negligently breached the terms of the escrow agreement by improperly disbursing funds in violation of such agreement. The Company was notified by the Bank of the institution of the Maricopa suit, but the Company chose not to defend the Bank in said action. The Bank itself then proceeded to defend the suit, asserting that the losses were occasioned through the fraudulent representations of Topping. But despite the Bank’s contentions, the trial Court ruled that the Bank was negligent in allowing the fraud to be perpetrated, and summary judgment was entered against the Bank and in favor of Maricopa in the amount of $42,674.85, which judgment was affirmed by this 2nd *75 District Court in The First National Bank of Belleair Bluffs v. Maricopa Corporation, Fla.App.1970, 230 So.2d 191.
The Bank now sues the Company for indemnity under the terms of the bond for the amount of said judgment and reasonable attorneys’ fees incurred and paid by it for defending the suit brought by Marico-pa, alleging substantially the foregoing facts.
The record here is silent as to what pleadings were filed or proceedings had, if any, in the lower Court following filing of the complaint by the Bank. But in the Bank’s brief filed here it is stated: “Following hearing disposing of motions directed to the pleadings, the trial court determined that there exists a question of law . . . and certified that question to this Court . . . ”, indicating some litigious activity. But we can only assume, and this is bolstered by the tenor of the certified questions, that the issue before the Circuit Court was the legal sufficiency of the complaint on its face. And no determination was apparently made of that issue on the trial level.
The questions certified to this Court are:
“I. May the Insured Bank, plaintiff in an action for indemnity under a blanket banker’s bond, plead and prove a loss occasioned by false pretenses so as to come within the coverage of the bond when the prior judgment by a third party against the Bank was based on negligence, not covered by the bond, or, must the Bank plead and prove that the former judgment recovered against it was based on a claim that was within the coverage provided by the bond in order to recover against the Insuror?
II. May the Insured Bank, plaintiff in an action on a blanket banker’s bond, suing for indemnity for court costs and reasonable attorney’s fees incurred and paid by it in defending the suit against it, plead and prove a loss occasioned by false pretenses so as to come within the coverage of the bond when the prior claim by a third party was based on negligence, not covered by the bond, or, must the Bank plead and prove that the former suit alleged facts which created liability within the terms and conditions of the bond?”
We must respectfully decline to answer the certified questions, which actually raise only the one question of the legal sufficiency of the complaint to state a cause of action for the Bank against the Company. That is a matter for the trial Court to determine, at least initially.
Rule 4.6 F.A.R., having to do with “Certified Questions from State Courts”, provides in subparagraph b thereof:
“b. Limitations On. Only questions or propositions of law that are definitely and concisely stated and that can be answered without regard to other issues in the cause will be considered by the' Court. The certificate shall not be employed in such a way as to affect the jurisdiction of the appellate court or the lower court, and must be limited to those cases in which instructions will facilitate the final disposition of the cause.”
Both the Supreme Court and the District Courts of Appeal have consistently given a strict interpretation to the rule for certifi-j cation of questions to an appellate Court under F.A.R. 4.6. In re: Aron’s Estate, Fla.App.1960, 118 So.2d 546; Clar v. Dade County, Fla.App.1960, 116 So.2d 34; Dade County v. Philbrick, Fla.1964, 162 So.2d 266. And where the certified question does not meet the prerequisites of F.A.R. 4.6, the appellate Court is constrained to decline an answer. Hillsborough County v. Bennett, Fla.1965, 173 So.2d 688; Lanier v. Florida Louisiana Red Cypress Co., 1943, 152 Fla. 428, 12 So.2d 117; Times Pub. Co. v. Rowland, 1948, 160 Fla. 736, 36 So.2d 419; Harvey v. City of Daytona Beach, Fla.1951, 51 So.2d 186.
*76 The original jurisdiction conferred upon Circuit Courts by Art. V, § 6 of the Constitution, F.S.A., cannot be transferred to the District Courts of Appeal by F.A.R. 4.6. Rosenberg v. Ryder Leasing, Inc., Fla.App.1964, 159 So.2d 873; Jordan v. Aetna Ins. Co., Fla.App.1965, 172 So.2d 483; Sieverts v. Loffer, Fla.1950, 45 So.2d 483.
The Circuit Court cannot divest itself of its original jurisdiction which is prescribed and ordained by the Constitution. Nor, by the same token, can this appellate Court preempt that trial jurisdiction. Newcomb v. Roarty, Fla. 1957, 93 So.2d 373; State v. Tindell, Fla.1955, 82 So.2d 746; and City of Hollywood v. Peck, Fla.1952, 57 So.2d 842.
Also, before an appellate Court may properly be called upon to answer a question certified to it by F.A.R. 4.6, there must have been a prior judicial determination by the trial Court of the question so certified. Rosen v. Hunter, Fla.App.1969, 227 So.2d 689; Pridgeon v. Folsom, Fla.App.1965, 174 So.2d 619.
The words of the venerable Justice Glenn Terrell of the Supreme Court in Schwob Co. of Florida v. Florida Industrial Commission, 1942, 152 Fla. 203, 11 So.2d 782, are apropos here:
“The appellate jurisdiction of this court cannot be invoked and a cause transferred bodily to it except from a determination of the inferior court. Transfer of a cause to this court without such determination amounts to transferring original jurisdiction to it. [Neither] the legislature nor this court has power to extend the jurisdiction of a court beyond that defined in the Constitution.”
To like effect is the concurring language of Justice Armstead Brown in the same case last cited:
“I concur in the holding that the two questions here sought to be certified are not such as are contemplated by Rule 38. [Now F.A.R. 4.6]. They are too long and complicated in their statement for one thing, and in effect ask us to decide the case pending in the Circuit Court, by postulating or hypothesizing a list of facts, and then asking, in effect, if the Circuit Court should not grant the relief prayed for. The questions as stated present mixed questions of law and facts.”
F.A.R. 4.6 may not be utilized for the purpose of apprising private litigants on the nature or extent of what their claims should or should not be, especially when it might involve the .rights of a person or persons who are not parties to the cause, which might well be the case here. Gordon v. Norris, Fla.1957, 90 So.2d 914; Dade County v. Philbrick, supra.
In accordance with the foregoing, we must decline to answer the questions so certified, and remand the cause back to the trial Court for further proceedings.
LILES and HOBSON, JJ., concur.